1

```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
 2                   ALEXANDRIA DIVISION

 3   ATHENA CONSTRUCTION GROUP,  )  Case 1:21-cv-396
     INC.,                       )
 4                               )
                     Plaintiff,  )
 5                               )
          v.                     )  Alexandria, Virginia
 6                               )  June 2, 2021
     WILLIAM M. SMITH, III,      )  9:27 a.m.
 7   and                         )
     RE CONSTRUCTION, LLC,       )
 8                               )
                     Defendants. )
 9   _____ )  Pages 1 - 37

10

11       TRANSCRIPT OF PLAINTIFF'S MOTION TO STRIKE DEFENDANTS'

12       SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO

13                          DISMISS

14                            AND

15       DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED

16                         COMPLAINT

17                VIA ZOOMGOV VIDEOCONFERENCE

18         BEFORE THE HONORABLE ANTHONY J. TRENGA

19            UNITED STATES DISTRICT COURT JUDGE

20

21

22

23
                                      EXHIBIT A
24

25       COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599

1  <u>APPEARANCES</u>:

2  FOR THE PLAINTIFF:

3      CRAIG A. GUTHERY, ESQUIRE
       EXECUTIVE LAW PARTNERS PLLC
4      4000 Legato Road, Suite 1100
       Fairfax, Virginia  22033
5      (703) 590-1234

6  FOR THE DEFENDANTS:

7      GLENN A. ELLIS, ESQUIRE, *PRO HAC VICE*
       ZACHARY S. FEINBERG, ESQUIRE, *PRO HAC VICE*
8      FREIWALD LAW, PC
       1500 Walnut Street
9      Philadelphia, Pennsylvania  19102
       (215) 875-8000

10

       JEFFREY J. DOWNEY, ESQUIRE
11     LAW OFFICE OF JEFFREY DOWNEY PC
       8270 Greensboro Drive, Suite 810
12     McLean, Virginia  22102
       (202) 789-1110

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Good morning.  Court is in

2   session.

3          Please call the case.

4          THE CLERK:  Civil Action No. 1:21-cv-396,

5   *Athena Construction Group, Inc. v. Smith, et al.*

6          Counsel, will you please note your

7   appearances for the record.

8          MR. DOWNEY:  Good morning, Judge.  Jeff

9   Downey for the defendant, William Smith.  I'd also like

10  to introduce Glenn Ellis, who has been *pro hac* into

11  this case.  He'll be making the arguments today on

12  behalf of the defendant.

13         THE COURT:  All right.  Welcome.

14         MR. ELLIS:  Good morning, Your Honor.

15         MR. GUTHERY:  Good morning, Your Honor.

16  Craig Guthery representing plaintiff, Athena

17  Construction Group.

18         THE COURT:  All right.  Let me put on the

19  record that to the extent there are any members of the

20  public on the line, you're directed not to speak during

21  this videoconference and to keep your line on mute

22  during the entirety of the hearing.

23         Additionally, any person remotely

24  participating in or listening to this proceeding may

25  not record or cause to be recorded any such proceeding.

 1  Nor may any person rebroadcast, livestream, or

 2  otherwise disseminate any live or recorded audio or

 3  video of this proceeding.  Any violation of this

 4  prohibition may result in sanctions as the Court deems

 5  necessary and appropriate.

 6          We're here on defendant's motion to dismiss.

 7  I've reviewed the briefing and would be pleased to hear

 8  further from counsel.

 9          Mr. Ellis.

10          MR. ELLIS:  Good morning, Your Honor.  Again,

11  I represent the defendants in this case, Bill Smith --

12  or William Smith and RE Construction.

13          We've moved for dismissal on two grounds,

14  essentially.  One is that these claims are time-barred

15  by the applicable statute of limitations and, two, that

16  even though the complaint alleges a complex conspiracy

17  involving computer hacking, the factual allegations in

18  the complaint are beyond threadbare.  They are

19  virtually nonexistent.  I believe there are only three

20  or four facts, and those facts don't speak directly to

21  the claims or support the claims.

22          And overlaying all of this, Your Honor, is

23  the public policy considerations of allowing this kind

24  of collateral attack on the relator in a different

25  forum, which is really just set up to harass and make

1   the life of the relator and his attorneys more

2   expensive and more difficult.

3            If Athena truly believed that they had claims

4   under these various computer crimes statutes, they

5   could have brought a cross-claim in the forum where the

6   relator's false claims action is, which is in the

7   district of D.C. under Judge Mehta.  They could have

8   gotten the same discovery.  They could have gotten the

9   same relief.

10            Instead, what they've chosen to do for the

11   third time, since the relator reported his allegations

12   of fraud to the government, is sue him in state court,

13   which then has been removed to this court.  The first

14   action was dismissed.

15            THE COURT:  I'm familiar with that history.

16            MR. ELLIS:  Right.  And what it has done is

17   it's caused extreme expense to the relator.  He's had

18   to get local counsel.  All the attorneys have had to

19   spend time on this.  And what we're looking at is a

20   very contentious discovery, and we're looking at, you

21   know, essentially a whole other district court having

22   to deal with this case when all of these claims could

23   have been dealt with in Judge Mehta's courtroom.

24            So overlying the procedural issues that we've

25   raised in our motion to dismiss is the public policy

1  considerations of allowing these kind of collateral

2  attacks to proceed.

3           THE COURT:  Well, what I'm concerned about is

4  what the basic facts of this case are in light of the

5  forensic report that's been referenced in the complaint

6  and which the Court does regard as integral to the

7  complaint.  The Court can consider the substance of it

8  even if it's inconsistent with the allegations in the

9  complaint.

10          We're dealing with, as I understand it, an

11 external hard drive as alleged --

12          MR. ELLIS:  Yes, Your Honor.

13          THE COURT:  -- that exists separate and apart

14 from the plaintiff's computer system.  Is that right?

15 Is that accurate?

16          MR. ELLIS:  That is correct, Your Honor.

17          THE COURT:  And I'll certainly ask

18 Mr. Guthery about this, but why don't you tell me what

19 you believe the facts are, as reflected in the

20 complaint, given the substance of the forensic report.

21          MR. ELLIS:  Well, the forensic report -- and

22 the reason why we attached it and we thought it was

23 important for the Court to look at -- is not the same

24 as what is alleged in the complaint.  There are several

25 allegations in the complaint that are attributable

1   supposedly to this forensic report.

2          But if Your Honor actually looks at the

3   forensic report, the only thing that TransPerfect was

4   asked to look at was whether or not anyone had accessed

5   that hard drive after the relator, Mr. Smith, had left

6   Athena.  And that is, essentially, the only conclusion

7   that they reached, that someone had taken that external

8   hard drive and accessed it, meaning just opened it.

9          THE COURT:  Right.  Well, that's not

10  accessing the plaintiff's computer system; is it?

11         MR. ELLIS:  Absolutely not, no, Your Honor.

12  And, in fact, the allegation -- it appears that someone

13  at RE Construction put their medical records on this

14  hard drive thinking that it was just a hard drive

15  available to use.

16         There's no evidence that anyone -- any of the

17  defendants -- any factual allegations that Athena's

18  property was broken into, that their computers were

19  accessed in the middle of the night where this hard

20  drive was connected and information was downloaded off

21  of their network onto the hard drive.  There's no

22  allegations that anyone at RE Construction reviewed

23  those documents.  There's no evidence that anyone at RE

24  Construction used them, for example, in a bidding

25  process or used them in any way.

1          The only allegation and the only thing that

2     the forensic analysis did was that the hard drive was

3     accessed.  But plaintiffs knew the hard drive was

4     accessed because in September 2018, they were told by

5     relator's counsel before Judge Mehta that the hard

6     drive existed, that the hard drive had been accessed by

7     the relator's attorneys, that documents were

8     downloaded, that the documents were Athena's internal

9     documents, business documents relating to the time that

10    the relator was employed there, and that those

11    documents were appended to an Amended Complaint and

12    provided to the government.  So in 2018, they knew it

13    was accessed.

14          THE COURT:  Do I understand correctly that,

15    at least reflected in the forensic report, the actual

16    files on the hard drive, you can tell when those were

17    actually put on that hard drive, and those precede

18    January 2016?  Is that accurate?

19          MR. ELLIS:  That is correct, Your Honor.

20          If you look at the supplemental and the

21    attached forensic report, according to Mr. Lyle, there

22    is a column on that spreadsheet that contains all

23    13,000 documents.  That column is called the file

24    created document.  While it is exceedingly difficult to

25    see -- and I had to use a magnifying glass myself -- if

1  you look through all of those pages -- over 100 pages,

2  I believe, of printout -- you will see that all 13,000

3  except for the 24 files relating to RE Construction's

4  medical records and their QuickBooks files, all of them

5  were downloaded onto that hard drive before Mr. Smith

6  was terminated by Athena.

7          That's important, Your Honor, as you know.

8  Because if plaintiffs can't prove that Mr. Smith did

9  not have authority to download, all of these, whether

10  it's the federal or the Virginia Computer Crimes Act,

11  fall because they all require an unauthorized access to

12  the hard -- to the networks and computers of the

13  plaintiff.  If he had authority -- because he did.  He

14  was the superintendent.  He was the highest official

15  under -- with regards to construction.  So underneath

16  the two owners, he had authority to download them.  He

17  did.

18          The only remaining claim would be potentially

19  a conversion claim or him walking away with the hard

20  drive after his termination.  But that claim was

21  already filed, and that claim was already dismissed by

22  Athena in their second Virginia lawsuit.  And they

23  don't bring that claim here.  So there's no claim here

24  for the taking of the physical property.  In fact,

25  Athena claims that the hard drive itself is not theirs.

1        So we think -- we argue and we believe that
2   this analysis --
3        THE COURT:  Was that earlier Virginia case
4   dismissed with prejudice?
5        MR. ELLIS:  It was voluntarily withdrawn.
6   Interestingly, it was filed within the statute of
7   limitations, but they withdrew it.
8        THE COURT:  You're not raising any *res*
9   *judicata* claim based on that earlier case?
10       MR. ELLIS:  No, Your Honor.  We're simply
11  referring to it as the basis that they were on notice.
12       THE COURT:  All right.
13       MR. ELLIS:  And they filed the lawsuit with
14  relations to this hard drive, and then they withdrew
15  that lawsuit.  And then they waited 11 months after
16  TransPerfect gave them the report before they filed
17  this case.
18       The only other thing I'll say with regards to
19  timing, Your Honor, is they had the report from
20  TransPerfect which underlays this entire case.  They
21  waited 11 months.  They waited about a month after the
22  government declined, and plaintiff and the relator
23  decided to proceed.  There's no coincidence that that
24  is the timing of when this lawsuit was filed.  This
25  lawsuit is just a third slap lawsuit, the third

1   harassing lawsuit, the third retaliation lawsuit

2   against Mr. Smith and has no basis.

3           I would only ask the Court to look carefully

4   at the timing of this with regards to the statute of

5   limitations argument.  We think that Athena has not

6   acted reasonably.  They knew in September 2018 that

7   this hard drive existed, that it had been reviewed,

8   that files had been copied, that they were internal

9   documents, and that there were thousands of pages.

10  They waited 14 months before they asked for it back,

11  and then they waited 11 months after their analysis

12  before they filed suit.

13          So even if the Court were to adopt a

14  discovery rule analysis, we don't believe that they

15  have acted reasonably, as a company should, once they

16  were put on notice that a third party had their

17  supposedly incredibly valuable internal documents.

18          So even under a discovery rule analysis, we

19  believe that they fail to show reasonableness in their

20  actions, and the complaint is completely silent, Your

21  Honor, on what they did.  Did they conduct an internal

22  investigation before the analysis?  Did they analyze

23  their networks?  Did they interview employees to see if

24  Mr. Smith was on the property?  Did they analyze their

25  network for illicit downloads?  Did they analyze the

1  key cards, the doors to see if Mr. Smith had gained

2  entry?  They're completely silent on that issue, Your

3  Honor.

4        THE COURT:  Let me just make sure I

5  understand your position.  Your view is on the statute

6  of limitations, Count 1 is barred be the two-year

7  statute applicable to loss and not damage.  And with

8  respect to Counts 2, 3, 4, and 6, it's barred by -- you

9  seem to rely on the two-year statute, but am I correct

10 that your position is that it's barred under either the

11 five-year or the two-year statute?

12       MR. ELLIS:  Yes, Your Honor.  It's barred

13 under that and under the -- I think Athena brought up

14 sort of an equitable tolling, an equitable estoppel

15 tolling argument to argue that they were somehow

16 precluded from knowing that their documents had been

17 obtained and accessed.

18       So even -- regardless of that, even if you

19 take the invitation to do that kind of analysis, if the

20 Court were to look carefully at Athena's actions, they

21 did not act as a reasonable corporation would,

22 especially one of the claims, $2 million worth of

23 damages based on this relief.

24       Your Honor is absolutely right with regards

25 to the federal crime -- the CFAA.  There's no

1  allegation in the system itself that the data was

2  impinged.  For example, you would get the longer

3  statute under the CFAA if these documents had been

4  erased from Athena's database and only existed on the

5  hard drive.

6          THE COURT:  Right, if the files were

7  corrupted in some way.

8          MR. ELLIS:  Right.  There's no allegation

9  that they lost access to the files or even that they

10 wanted to use the files or that the system was in any

11 way damaged.  So they would be under the two-year

12 statute for that, and I think the statute is very clear

13 when the court should adopt a discovery rule under

14 that.  We believe that claim should be out absolutely

15 based off the two-year statute.

16         The only other thing that I'll bring to Your

17 Honor's attention is we currently are engaged -- so far

18 in this case, there's been a lot of motion practice

19 already.  There's a motion to quash that's going to be

20 heard on Friday before the magistrate judge regarding

21 our request to depose Mr. Lyle.  We believe that

22 Mr. Lyle should be deposed as a fact witness.  His

23 analysis underlies this entire case.  Athena has

24 objected claiming that we're not entitled to his

25 deposition until expert discovery.  That's the kind of

1   gamesmanship and hiding the ball that Athena is

2   engaging in to draw this out.

3           They claim $2 million worth of damages.

4   They've produced no documents documenting the

5   $2 million worth of damages.  They claim that no such

6   documents exist.  If they do exist, they're not going

7   to produce them until they produce an economic expert

8   report.

9           That's not appropriate.  This case is going

10  to be contentious if it goes forward in discovery.

11          Again, this case -- if Athena really truly

12  believed they had merits, it should be before Judge

13  Mehta and not before any court in Virginia.

14          I'll take any other questions and rest on our

15  briefs, Your Honor.

16          THE COURT:  All right.  Thank you.

17          Mr. Guthery.

18          MR. GUTHERY:  Yes, Your Honor.  I think there

19  was a lot of points that were made by Mr. Ellis.

20  Hopefully, I'm going to hit all of them.  I'm certain

21  you'll ask questions if I miss any of them.

22          The main thing that I wanted to mention here

23  is that filing a *qui tam* action does not negate past

24  violations of law, and that's why this case is here.

25  We filed this case because we discovered, after the

1   forensic analysis, that contrary to what Mr. Smith told

2   Judge Mehta -- or Mr. Smith's counsel told Judge Mehta,

3   this was not a hard drive that he found and was

4   conducted by Athena as part of a regular backup system.

5   That just simply was not the case.  That was not true.

6           Our analysis showed that the hard drive was

7   not even Athena's.  Our analysis showed that files were

8   copied to the hard drive within a week or two weeks or

9   three weeks after judge -- after Mr. Smith was

10  terminated.

11          THE COURT:  Well, on that point, though, is

12  that supported by the forensic report?

13          MR. GUTHERY:  It is, Your Honor, and I'll

14  address that right now.  What Mr. Ellis is focusing on

15  is a footnote in the report, footnote 6, that talks

16  about the file created date.  I looked at that footnote

17  after it was brought up by Mr. Ellis.  I recognized

18  that there was an ambiguity to it.  So I interviewed

19  Mr. Lyle afterwards to find out what it was, and this

20  is not what Mr. Ellis says that it is.  The file

21  created date is not the date that the files were copied

22  onto the hard drive.  It cannot be because many of the

23  files that are on the hard drive have a file created

24  date from 2011, some of them going back to 2005.  The

25  hard drive didn't even exist in 2005.

1          THE COURT:  Well, what was accessed in

2   January -- whatever the date was, January 2016 and

3   February 2016?  It was the external hard drive,

4   correct?

5          MR. GUTHERY:  The external hard drive was --

6   it was modified on those dates in 2016, yes.

7          THE COURT:  Right.  And that external hard

8   drive at that point in time existed separate and apart

9   from the plaintiff's computer system, correct?

10          MR. GUTHERY:  That is correct, Your Honor,

11   yes.

12          THE COURT:  How is that unauthorized access

13   to the plaintiff's computer system?

14          MR. GUTHERY:  The files only existed on

15   plaintiff's computer system.

16          THE COURT:  But they had already been

17   downloaded onto the external hard drive, correct?

18          MR. GUTHERY:  No, Your Honor.  No, that is

19   not correct.  I understand where that is the

20   distinctions coming back.  Mr. Ellis is focusing on the

21   file created date.  The file created date is not the

22   date that the file was put onto the hard drive.  The

23   file created date was the date that the file itself was

24   actually created for the very first time.  The file was

25   created on Athena's systems on the dates that the file

1   created, 2012, 2013, some of them going back all the

2   way to before that date.

3          But I can -- the reason that I can justify

4   this or I can prove this to you, that the file created

5   date does not represent the date that the files were

6   copied to the hard drive, is the files on that hard

7   drive where the file created date is from, in one case,

8   2005.  The hard drive was not even in existences at

9   that time.  So if the file created date is 2005 and the

10  hard drive was not even created on that date, then,

11  therefore, the file created date of 2005 cannot

12  represent when the file was originally placed or was

13  copied to the hard drive.

14          THE COURT:  Why don't you speak to the

15  statute of limitations issue.

16          MR. GUTHERY:  Certainly, Your Honor.

17          Based, again, on the explanation that

18  Mr. Smith gave to Judge Mehta and to Athena in 2018, we

19  understood that the hard drive from him -- that he

20  found it in his belongings and that it was a backup

21  that was conducted by Athena.  Well, Athena did not

22  have possession of the hard drive, had no idea of

23  knowing whether -- how the files were put on there.

24  And so we could only rely on the statements that

25  Mr. Smith made, that this was an Athena backup that

1   just happened to be in his personal belongings.

2           We discovered only after we got the hard

3   drive back --

4           Incidentally, this was the second Virginia

5   case.  It was a conversion in detinue action that was

6   brought by Athena once they learned that the hard drive

7   was actually from Mr. Smith.  Mr. Smith said that the

8   hard drive was Athena's.  We said, okay, well, let's

9   get it back.  They refused, forced us to bring this

10  Virginia action.  Then we eventually got it when they

11  decided to surrender it and thereby dismiss the case.

12          When we got that hard drive, we gave it to

13  our expert, to Mr. Lyle.  It was Mr. Lyle's analysis of

14  the hard drive that determined, most importantly --

15  well, one of the most important things was that this is

16  not an Athena hard drive.  Contrary to what Mr. Smith

17  told Athena and Judge Mehta, it was not an Athena hard

18  drive that was created as part of a regular backup.

19  This hard drive is from an unknown origin; yet, it was

20  in Mr. Smith's possession.

21          Then when Mr. Lyle analyzed the hard drive,

22  he found out that a week -- one week and three weeks

23  after Mr. Smith's termination, 13,000 files were loaded

24  to that hard drive.

25          THE COURT:  As alleged, the violation

1   occurred, at the latest, on February 15, 2016, correct?

2          MR. GUTHERY:  The violation -- that's what we

3   see here, that there was copying of the hard drive that

4   was done in February 2016, yes.

5          THE COURT:  Right.  And so the question is

6   what statute of limitations starts to run as of that

7   date, and why doesn't the two-year federal statute run

8   from that date and the five-year statute run from that

9   date?

10          MR. GUTHERY:  Well, certainly, the two-year

11   statute is tied to the discovery provision.

12          THE COURT:  Well, that's if you characterize

13   what was done as damages opposed to loss, correct?

14          MR. GUTHERY:  That is correct, Your Honor.

15          THE COURT:  Why is there damages in this

16   case?  You have not alleged any corruption of these

17   files, any impairment of the company's ability to

18   access these files or use these files.  How is there

19   any damage plausibly alleged in this complaint?

20          MR. GUTHERY:  The damage is to the integrity

21   of the secrecy of the files.

22          THE COURT:  It's not a matter of secrecy.

23   It's a matter of whether the files themselves have been

24   damaged.  There's no allegation of that; is there?

25          MR. GUTHERY:  There's no allegation the files

1  on Athena's servers that were copied were themselves

2  damaged.  The damage that was done was to the integrity

3  of the files themselves, that integrity, based on the

4  fact that these are trade secrets and that by divulging

5  the trade secrets, you did damage to the trade secrets.

6          THE COURT:  Well, that would eliminate the

7  distinction between loss and damage, wouldn't it, that

8  view of what damage is?  You would have damage in every

9  case.  You wouldn't need the loss provision.

10          MR. GUTHERY:  Well, when you say the damage

11 is -- well, you need the loss provision in --

12          THE COURT:  When would you have loss or

13 damage under your view?

14          MR. GUTHERY:  Well, the *State Analysis* case

15 from Judge Brinkema is an example of that.  In that

16 case, the files were -- it was data that was made

17 available to subscribers to the service.  And so that

18 data was created with the specific express intention of

19 sharing it with other people.  What happened in that

20 case is that there were people who were no longer

21 subscribers that accessed the data.  The loss there, of

22 course, was the loss of the subscription fees.  It was

23 not the loss of any integrity of the data itself.

24          THE COURT:  Well, in a similar sense, the

25 loss in that case -- and I agree with you that the

1   facts are different in that case.  But you had loss of

2   secrecy in the sense that people who weren't entitled

3   to have that information were given that information

4   and had that information shared with them.

5           I have to tell you.  I think your view of

6   damage is so all-encompassing that it effectively

7   eliminates the distinction that the statute creates

8   between loss and damage.

9           But anyway, let's go on.  What about the

10  five-year statute?  Why doesn't the five-year statute

11  run as of February 15, 2016?

12          MR. GUTHERY:  One of the reasons, Your Honor,

13  is that we have information from the analysis that the

14  copies were filed -- that there were copies made in

15  January and February 2016, but there's also evidence in

16  that modified date that there were dates afterwards

17  that it happened as well.  We just don't know, until we

18  get into discovery, exactly the extent of the invasion

19  of Athena's computers.  And we -- I'm not sure what

20  else to say about that, Your Honor.  It is --

21          THE COURT:  What allegations are there in

22  here that support your substantive claim against the

23  core defendant and also your conspiracy claims?

24          MR. GUTHERY:  The substantive claim, Your

25  Honor?

1           THE COURT:  Yes, against the company.

2    Because you don't -- you just lump the defendants

3    together.  You don't allege anything separate and apart

4    with respect to RE Construction or any use by them

5    or -- all you allege is Smith's conduct, and then you

6    include both of them in your allegations.

7           MR. GUTHERY:  I understand, Your Honor.  The

8    issue here is that relationship between the two

9    defendants and the unity of purpose.  In this case,

10   Mr. Smith was -- not only are they related,

11   father-in-law and son-in-law, they live together.

12   Mr. Smith eventually became an employee of RE

13   Construction.

14          THE COURT:  Do you allege when that happened?

15   Do you allege when he became an employee?

16          MR. GUTHERY:  We do not know, Your Honor.  We

17   don't know.  We don't learn something like that until

18   we get into the discovery of the case.  But we do know

19   that he is an employee because that was revealed by the

20   defendants, that Mr. Smith was -- did become at one

21   time an employee, but I do not have the date, Your

22   Honor.

23          So the thing is that RE Construction at the

24   time that there was this close relationship between

25   Mr. Smith and Mr. Ellis -- that continues today, but

1  certainly, there was that close relationship at that

2  time RE Construction was engaged in litigation with

3  Athena.  Not only that, RE Construction was a

4  competitor of Athena.  So because of this combination

5  and closeness between the parties, there was a

6  knowledge that was going on about what was being done.

7           Mr. Smith had just been terminated for cause

8  by Athena.  And so the invasion of the computer and the

9  copying of the file to the hard drive would have

10 occurred within the same household as RE Construction

11 and with the purpose that RE Construction would benefit

12 from learning trade secrets from Athena.

13          THE COURT:  There's no evidence or

14 allegations here as far as how this downloading from

15 Athena's computers to this external hard drive took

16 place, under what circumstances, how Smith was able to

17 do it.  He was terminated.  I assume his password had

18 been terminated as well.  There's no allegations of how

19 that happened.

20          MR. GUTHERY:  Your Honor, there are certainly

21 suspicions, and suspicions cannot go into the

22 complaint, obviously.  We simply do not know.  They

23 covered his tracks so well that there was no evidence

24 that we could see on the computer system from Athena.

25 What we have is trade secrets and files of Athena that

1  are contained on a hard drive that never belonged to

2  Athena, that are in the possession of a terminated

3  employee with the motivation to use this information.

4         We do have the exact dates that they were

5  copied.  We have the dates that -- we have the

6  information that is contained in these files.  We know

7  that it was -- that it was done -- again, that it was

8  done after Mr. Smith's termination from Athena.  And so

9  making that connection, however, to knowing exactly

10  when he accessed the computers, whether he did it under

11  cover of night, whether he had assistance from someone

12  at Athena, whether there was some other invasion that

13  happened, we don't have that information because it is

14  something that is going to have to be disclosed in

15  discovery.

16         THE COURT:  Based on the complaint -- I may

17  be misremembering what's in the complaint as opposed to

18  the briefing.  But as I recall, the allegation is that

19  Athena became aware that Smith possessed this external

20  hard drive in 2018, September 2018.

21         MR. GUTHERY:  Correct.

22         THE COURT:  Apparently, that disclosure

23  wasn't alarming to Athena.

24         MR. GUTHERY:  Well, it was, Your Honor.

25  Maybe not on the time line that Mr. Ellis had

1   mentioned, but it certainly was.  But keep in mind that

2   what we were being told was that this hard drive was an

3   Athena hard drive that was created as part of a regular

4   backup process while Mr. Smith was still an employee.

5   He certainly had the authority to do that.

6             THE COURT:  Right.  His possession of it

7   didn't cause Athena to think that explanation was

8   unreasonable?

9             MR. GUTHERY:  Well, it did, Your Honor.  We

10  brought the conversion and detinue action to get

11  control of the hard drive so that we could look at it.

12            THE COURT:  When did you get control of it?

13            MR. GUTHERY:  In February of 2020.

14            THE COURT:  Right.  So a year-and-a-half

15  later.

16            MR. GUTHERY:  Well, it required us to go into

17  the Virginia circuit court, Your Honor, and file a

18  conversion and detinue action.  It was only in the

19  settlement of that action that we were actually given

20  the hard drive.  Athena did diligently try to gain

21  access to the hard drive.  Mr. Smith refused to turn

22  over this hard drive that he admitted was Athena's --

23  or that he stated was Athena's hard drive and refused

24  to turn it over.  We had to go to court to get

25  possession of it.

```
 1              THE COURT:  I understand.  All right.
 2              MR. GUTHERY:  The conspiracy --
 3              THE COURT:  Yes.
 4              MR. GUTHERY:  -- I think that's what we were
 5   discussing, Your Honor.  And one of the exempt --
 6   arguments that Mr. Ellis made about the conspiracy
 7   statute was this intracorporate conspiracy doctrine.
 8   And we address that in our opposition, Your Honor, that
 9   there is -- Mr. Smith had just been terminated from
10   Athena when the first of these copies apparently
11   happened.  And that unless Mr. Ellis is willing to say
12   that Mr. Smith was immediately hired by RE
13   Construction, there would be no intracorporate
14   conspiracy doctrine that would prevent us from bringing
15   this conspiracy -- prevent a conspiracy claim.
16              THE COURT:  The problem is you have to say
17   more than a conspiracy existed.  I mean, it's not quite
18   a Rule 9 standard on a fraud claim, but it's pretty
19   close.
20              MR. GUTHERY:  Yes.  I understand, Your Honor.
21   And what we have tried -- what we have alleged in the
22   Amended Complaint was to show that close coordination
23   or the close combination and relationship between
24   Mr. Smith and RE Construction, both as being related to
25   them, being an interventional employee, living in the
```

1   same house, being aware of each other's actions, that

2   this together -- and the fact that RE Construction

3   stood to gain quite a bit from Mr. Smith's access to

4   the files.  They were the bases -- our factual bases

5   for the conspiracy claim.

6               THE COURT:  All right.  Anything further?

7               MR. ELLIS:  Your Honor, this is Glenn Ellis.

8               THE COURT:  Mr. Ellis, yes.

9               MR. ELLIS:  Yeah.  I would like to just work

10  backwards to the front there.  Just to be clear, the

11  first request from Athena's counsel for the hard drive

12  came 14 months after they learned about its existence.

13  So they did nothing for 14 months.  The complaint is

14  completely silent about any kind of internal

15  investigation Athena did.  There is nothing in the

16  record or in the complaint that they did anything to

17  analyze their network, to analyze their computers, to

18  talk to their employees, to do anything.  For 14

19  months, they did nothing.

20              Then they make a request in November 2020,

21  and by February, they have the hard drive back.  They

22  analyze the hard drive.  They get a report.  If Your

23  Honor looks at the report, the report is dated April 9,

24  2020.  They have the report that supposedly releases

25  all the facts that support this case.  They do nothing

1  with that report for 11 months, and they allow the

2  statute both for the federal and for the Virginia

3  Computer Crimes Act to expire.  They did nothing for 11

4  months after they supposedly had all the knowledge they

5  needed.

6           The problem is that that report -- as Your

7  Honor hit the nail right on the head, is that that

8  report does not support and the inferences in -- that

9  support and the facts in the complaint do not support

10 the inference that Athena is trying to make.

11          That report -- the findings of that report,

12 which are found in paragraph 16, is that my analysis

13 located artifacts demonstrating that the hard drive was

14 accessed between January 2016 and April 2, 2018, that

15 the hard drive was accessed.  Well, that's not in

16 dispute.  The relator's counsel accessed that hard

17 drive and took its information to the government in

18 2018.

19          That doesn't support a finding or an

20 inference that Mr. Smith accessed Athena's computers.

21 That information is completely absent from the

22 complaint, and that information is not in the

23 possession of the defendants.  That information would

24 be in possession of Athena.  Athena could go into their

25 computer networks and tell when files were taken off

1  and put onto this hard drive.

2          According to the report we have -- and I know

3  there's been a reference to a subsequent conversation

4  with Mr. Lyle.  But according to the report we have,

5  all of these files were downloaded at some point onto

6  this hard drive before two thousand -- I think the

7  latest one is like 2014 except for those 24 QuickBooks

8  and medical record files.  There's nothing in the

9  report that suggests that this hard drive was hooked up

10  to Athena's network on a certain date, that those files

11  were downloaded onto the hard drive.

12          There's nothing, and there's nothing in the

13  complaint that would support that kind of inference.

14  And there's nothing in the complaint, importantly, to

15  show that Athena has made a diligent and reasonable

16  effort to get those answers.  There's nothing that the

17  plaintiffs show that they even tried to get those

18  answers, to get those facts that would support their

19  case.

20          If the computer network was scrubbed, they

21  should be able to tell that it was scrubbed.  You know,

22  we live in a surveillance state.  Surely, there would

23  be some information or some action they could have

24  taken.  The complaint is completely silent on that.

25          With regards to this unity of purpose and

1  this issue with RE Construction, RE Construction was

2  engaged in litigation as a subcontractor to Athena.  Is

3  there an allegation that these documents were used as

4  part of that litigation?  No.  They're alleged to be a

5  competitor.  Is there an allegations that these

6  documents were used in a bidding process to gain an

7  advantage?  No.  There's no allegation that these

8  documents were in any way misappropriated by RE

9  Construction or used by RE Construction.

10         And, in fact, I would suggest the fact that

11  RE Construction personnel downloaded their medical

12  files onto this criminal apparatus -- supposed criminal

13  apparatus shows that they were not aware that this hard

14  drive was part of a criminal conspiracy and a criminal

15  enterprise, as Athena suggests.  It shows the exact

16  opposite, that they had no idea what was on this hard

17  drive.

18         So we just think the complaint is beyond

19  threadbare.  It is just a series of allegations with no

20  support.  In view of Mr. Lyle's report, it, quite

21  frankly, verges on fabrication because the things that

22  are being attributed to him do not appear in this

23  report.

24         That's all I have, Your Honor.

25         THE COURT:  All right.

1          MR. GUTHERY:  Your Honor, may I respond very

2   briefly?

3          THE COURT:  Yes.  Go ahead.

4          MR. GUTHERY:  A lot of what Mr. Ellis just

5   said are facts that he says were not contained in the

6   complaint, and that's not what's before Your Honor.

7   The facts that Mr. Ellis believes should have been pled

8   in the complaint or wish that he had seen in the

9   complaint are not there.  And the reason -- it is

10  improper, I think, for him to allege that the inference

11  is that they simply do not exist.

12          There is discovery to take place in this case

13  in which many of the facts that Mr. Ellis is claiming

14  are not in the complaint will be covered.  But the

15  inferences -- he's asking you to draw inferences

16  against Athena when that's also not where we are at

17  this stage.  The facts that we have alleged are

18  considered true.  The inferences are supposed to be

19  drawn in our favor.

20          In this case, when the files were actually

21  put onto the hard drive is a fact that is in dispute,

22  at the very least, if what Mr. Ellis is saying is true.

23  Because we believe that our expert is going to testify.

24  It will be made very clear that these files were copied

25  to the hard drive after Mr. Smith's termination, that

1 Mr. Ellis put into his supplemental brief that was

2 filed, you know, 15 minutes before our opposition, so

3 we couldn't address it in our opposition.  It's not the

4 end result of an expert -- a testifying expert's

5 disclosed report.  That is yet to come.  The

6 allegations that are in that report, the allegations

7 that we've made in our complaint are not inconsistent.

8 They are considered true.

9           So, Your Honor, we would encourage you to

10 take what we know that support our claims for all of

11 these different claims that we bring and to allow this

12 case to go forward.

13           THE COURT:  All right.  Thank you.

14           Mr. Ellis, I'll give you the last word.  It's

15 your motion.

16           MR. ELLIS:  The only other thing I will say,

17 Your Honor, is that Athena hasn't issued a single

18 request for production of documents.  They haven't

19 issued a single interrogatory.  They've only sought the

20 deposition of Mr. Smith.  They're not looking for any

21 discovery beyond the deposition of Mr. Smith.  They're

22 not looking for anything from us.

23           With regards to Mr. Lyle, they're not even

24 allowing us -- they're objecting to us taking his

25 deposition.  This is their complaint.  They need to

1  have the facts that support what happened here, at

2  least enough to raise the inference, and it's just not

3  here.  That's why we've moved to dismiss, Your Honor.

4         THE COURT:  All right.  I reviewed the motion

5  to dismiss.  At this point, the Court is obligated to

6  construe the factual allegations in the complaint in a

7  light most favorable to the plaintiff.  It's not,

8  however, required to accept conclusory allegations.

9         I've reviewed the allegations of the

10  complaint in detail.  I think there is a real issue as

11  to whether the allegations pertaining to when the

12  alleged violations took place and when the information

13  was downloaded onto the hard drive is consistent with

14  the forensic report.  The Court can't make a definitive

15  judgment on that, frankly, and the Court doesn't need

16  to for the purposes of ruling on this motion to

17  dismiss.

18         Let me first take up the statute of

19  limitations issue.  Count 1 alleges a violation of the

20  Computer Fraud and Abuse Act.  The statute of

21  limitations is two years from the date of loss or two

22  years from the discovery of any damage.  Loss is

23  defined as any reasonable cost to any victim.  Damage

24  is defined as any impairment to the integrity or

25  availability of data, a program, assistive information.

1              Plaintiff has alleged economic loss.  It is

2    only alleged in conclusory fashion that there was

3    damage, and the Court does not believe that it has

4    alleged facts that make plausible that the plaintiff

5    has sustained damage as that term is used under the

6    Computer Fraud and Abuse Act.  All that is plausibly

7    alleged, at most, is that files were downloaded from an

8    Athena computer onto the external hard drive.  There's

9    no allegation that those files were corrupted in any

10   way or that access to those files were prevented or

11   that there was a virus infused into the computer.

12   There isn't anything along those lines that would

13   suggest any damage.

14              So the Court concludes that there's a

15   two-year statute of limitations that begins from the

16   date of loss, which is alleged here as no later than

17   February 15, 2016.

18              With respect to Counts 2, 3, 4, and 6,

19   plaintiff alleges violations of several of the state

20   criminal statutes under the Virginia Computer Crimes

21   Act.  The set limitations period under those statutes

22   are the earlier of five years from the last act in the

23   course of conduct constituting a violation or two years

24   after the plaintiff discovers or reasonably should have

25   discovered the last act.

1          Again, the allegations in the complaint
2  allege that the violation took place on February 15,
3  2016.  The case was filed on March 1, 2021, beyond the
4  five-year statute irrespective of whether the statute
5  of limitations would not have expired under the
6  two-year statute.  Although, again, it appears that it
7  would have expired under the two-year statute as well.
8          With respect to Count 5 -- let me come back
9  to Count 5.
10         Let me go to the conspiracy claims.  Count 6
11 alleges business conspiracy.  Count 7 alleges
12 common-law conspiracy.  There's really no allegations
13 here that plausibly allege a conspiracy.  All that is
14 alleged is that Smith engaged in his conduct before he
15 became an employee.  He subsequently became an
16 employee.  There are no allegations of any
17 communications between the two before he joined, no
18 facts from which you could plausibly infer that there
19 was any concerted action, no communications.  There's
20 no allegations that even the material on that hard
21 drive was used in the business of RE Construction, no
22 allegations of any time, place, manner, or discussions
23 of any of the aspects necessary for a conspiracy claim.
24 And, again, really nothing more than just a naked
25 allegation of conspiracy.  So the Court finds the

1  complaint does not plausibly allege facts that support

2  Count 6 or Count 7.

3          With respect to the substantive claims, under

4  all of them -- and this is all the counts -- as to RE

5  Construction, the Court simply does not find any facts

6  that plausibly allege any violation of any of the

7  statutes on the part of the corporation.  There's no

8  allegations that, again, they knew about Smith's

9  conduct, that they utilized any of that information to

10  their business advantage.  All of those facts are

11  simply lacking, and the Court can't conclude that the

12  plaintiff has alleged substantive claims against the

13  corporation under any of those counts.

14          With respect to the Trade Secrets Act, again,

15  I don't think the complaint plausibly alleges the

16  information was utilized as trade secrets or gave any

17  kind of competitive advantage.  Again, this is pretty

18  threadbare conclusory types of allegations.

19          I wanted to speak to one other piece of this,

20  if I could.

21          I think those are the two points I wanted to

22  make.  One is I think the allegations are too

23  conclusory to establish there were trade secrets or

24  that either of the defendants misappropriated those as

25  required under the statute.

1          So for all of those reasons, the Court is

2     going to grant the motion to dismiss all of the counts

3     of the complaint.  All right.

4          MR. DOWNEY:  Judge, did you have something

5     else you wanted to say about Count No. 5?  You were in

6     the middle of talking about that.

7          THE COURT:  That's the trade secrets count.

8          MR. ELLIS:  Your Honor, this is Glenn Ellis.

9          THE COURT:  Yes.

10         MR. ELLIS:  The only thing else I would ask,

11    Your Honor, is that you make the dismissal with

12    prejudice.  Again, this is the third lawsuit filed.

13         THE COURT:  Well, a granting of a motion to

14    dismiss is with prejudice.  All right.

15         MR. ELLIS:  Thank you, Your Honor.

16         MR. GUTHERY:  Thank you, Your Honor.

17         MR. DOWNEY:  Thank you, Judge.

18         THE COURT:  The Court thanks counsel.

19         The Court will stand in recess.

20     (The time is 10:15 a.m.)

21         -----------------------------------
                    Time:  10:15 a.m.

22
        I certify that the foregoing is a true and
23     accurate transcription of my stenographic notes.

24
                           _____
                                  /s/
25                         Rhonda F. Montgomery, CCR, RPR


        Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599