1

1                     UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
2                          ALEXANDRIA DIVISION

3    ATHENA CONSTRUCTION GROUP,  )  Case 1:21-cv-396
     INC.,                       )
4                                )
                    Plaintiff,   )
5                                )
           v.                    )  Alexandria, Virginia
6                                )  August 25, 2021
     WILLIAM M. SMITH, III,      )  11:17 a.m.
7    and                         )
     RE CONSTRUCTION, LLC,       )
8                                )
                    Defendants.  )
9    _____)  Pages 1 - 26

10

11           TRANSCRIPT OF RE CONSTRUCTION'S MOTIONS FOR

12                    COSTS AND ATTORNEY'S FEES

13          BEFORE THE HONORABLE ANTHONY J. TRENGA

14             UNITED STATES DISTRICT COURT JUDGE

15

16

17

18

19

20

21

22

23

24

25        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1   APPEARANCES:

2   FOR THE PLAINTIFF:

3        MILTON C. JOHNS, ESQUIRE
         EXECUTIVE LAW PARTNERS, PLLC
4        11130 Fairfax Boulevard, Suite 303
         Fairfax, Virginia  22030
5        (703) 444-5155

6   FOR THE DEFENDANTS:

7        GLENN A. ELLIS, ESQUIRE, *PRO HAC VICE*
         FREIWALD LAW, PC
8        1500 Walnut Street
         Philadelphia, Pennsylvania  19102
9        (215) 875-8000

10       JEFFREY J. DOWNEY, ESQUIRE
         LAW OFFICE OF JEFFREY DOWNEY PC
11       8270 Greensboro Drive, Suite 810
         McLean, Virginia  22102
12       (202) 789-1110

13

14

15

16

17

18

19

20

21

22

23

24

25

1            THE CLERK:  Civil Action 1:21-cv-396, *Athena*
2  *Construction Group, Inc. v. Smith, et al.*
3            Counsel, will you please note your
4  appearances for the record.
5            MR. DOWNEY:  Good morning, Your Honor.  Jeff
6  Downey for the defendant.  I'd like to introduce Glen
7  Ellis, who will be presenting the argument today.
8            THE COURT:  All right.  Welcome.
9            MR. ELLIS:  Good morning, Your Honor.
10           MR. JOHNS:  Good morning, Your Honor.  Milton
11  Johns for Athena Construction.
12           THE COURT:  All right.  We're here on the
13  defendant's motion for costs and attorney's fees.  I
14  have read the briefing.  I'd be pleased to hear further
15  from counsel.
16           MR. ELLIS:  Yes, Your Honor.  This motion is
17  being brought solely by RE Construction, one of the
18  defendants in the case that was brought against them by
19  Athena.  The reason why RE Construction has asked us to
20  file this case is because there was simply no basis for
21  them to ever be included, and it would be unreasonable
22  and completely unfair to have them pay half of the
23  attorney's fees to defend what on its surface was
24  clearly a frivolous and bad faith lawsuit.
25           We've brought this motion under both the

1  Virginia good faith statute, which governs the

2  requirements of an attorney signing a complaint --

3  since this case was initially filed in state court --

4  and also under the Virginia Uniform Trade Secrets Act,

5  which allows the Court to issue attorney's fees for bad

6  faith cases.

7          The Virginia good faith statute is very

8  similar to the Rule 11 statute that we have here in

9  federal court.

10         THE COURT:  It doesn't prescribe the

11 procedure as Rule 11 does, though.

12         MR. ELLIS:  No, it doesn't have the

13 procedures and the safe harbor and everything that

14 Rule 11 has.  But it sets forth what would be the

15 basis, and it sets forth kind of -- they use a

16 reasonableness standard and whether or not the

17 complaint, prior to being signed by counsel, is well

18 grounded in fact.

19         THE COURT:  Right.

20         MR. ELLIS:  And that's the issue.

21         THE COURT:  I think it's an open issue,

22 whether that statute applies, frankly.  I think it

23 depends on whether it's viewed as a procedural statute

24 or a substantive statute.  It think if it's procedural,

25 it's simply displaced by Rule 11.  If it's substantive,

1  then perhaps it applies, whether someone can recover

2  under it, if it does apply, under circumstances where

3  Rule 11 might not apply.

4             MR. ELLIS:  Well, I think Your Honor is

5  right.  The Fourth Circuit hasn't spoken on it.

6             THE COURT:  Right.

7             MR. ELLIS:  There could be, like Your Honor

8  was talking about, the issue with waiving Fifth

9  Amendment rights.  It depends on how you would

10 interpret.  There are courts that have -- and we cite

11 to it in a footnote -- that have looked at it and

12 interpreted it.

13            THE COURT:  Right.

14            MR. ELLIS:  Regardless, even under the

15 Virginia standard, whether you look at it under Rule 11

16 or whether you look at it under the bad faith standard,

17 under the Virginia Uniform Trade Secrets Act, the fact

18 here is that there was nothing -- there was no basis to

19 include RE Construction.

20            THE COURT:  The fees were awarded under the

21 Trade Secrets Act.  That would be limited to the trade

22 secrets count; wouldn't it?

23            MR. ELLIS:  Well, I would argue that it would

24 not, Your Honor.  Because here what were the

25 allegations were so interwrapped between all of the

1  criminal computer statutes that there was no way to

2  really just defend against --

3          THE COURT:  They argue you would spend the

4  same amount of money if that were the only count.

5          MR. ELLIS:  Quite frankly, they brought a

6  conspiracy claim that made RE Construction liable

7  potentially for all of the other claims, including the

8  Virginia statute and the other computer criminal act.

9  And there was simply no reason for them to be ever in

10 this case.  Quite frankly, the response from Athena

11 virtually admits that.

12         The only facts in the case as to why they

13 included them was there was a close familial

14 relationship.  There was a suggestion of cohabitation,

15 an in-law relationship, and RE Construction -- someone

16 at RE Construction had put their records, their medical

17 records on this hard drive.  That's it.  That's the

18 allegations that they suggest should have allowed them

19 to put forward a well-grounded complaint of computer

20 hacking and trade secret theft against RE Construction.

21 There's no suggestion -- there's no facts that any of

22 those actions were actually committed by anyone at RE

23 Construction.

24         I will point to the Court's attention on

25 page 10 of the defendant's response.  Their response,

1  the last sentence, is Athena had a good faith basis to

2  believe that discovery in this action would reveal the

3  extent of RE Construction's access and use, discovery.

4        In other words, this has always been a

5  fishing expedition against RE Construction and that

6  they were hoping that maybe they would find something

7  in discovery.  That is not the basis -- that does not

8  meet the requirements of whether you look at a Rule 11

9  or through a Virginia court or even the bad faith

10 statute under the Trade Secrets Act.

11       They had to have a complaint well-reasoned in

12 fact against RE Construction, not against Mr. Smith,

13 against RE Construction.  They had to have it against

14 both of them.  We're here about RE Construction.

15       There was nothing in the complaint that

16 suggests RE Construction had ever misappropriated --

17 had ever accessed these documents, misappropriated

18 these documents, or done anything with this hard drive

19 other than put their own sensitive medical records on

20 there, apparently by accident, since the hard drive was

21 then later claimed by Athena.

22       In that case, it is clear that there was no

23 basis for it.  So why did they bring the case?  Why did

24 they bring the case against RE Construction?  They had

25 already sued Mr. Smith twice in state court.  Well,

1   they brought it because of those exact reasons that I

2   just mentioned.  They knew that RE Construction's owner

3   was a close familial member.  They thought that there

4   was a cohabitation there.  They brought it to harass

5   the relator in the *qui tam* case, to cause more problems

6   in his life, to drive up the litigation costs to not

7   only himself but now to his in-law.

8         What other facts are there?  Well, we know

9   that this case was not filed until the relator decided

10   to proceed after the government declined.  So those are

11   the facts that I think this Court, looking at this

12   complaint and the pleadings and the briefings, can draw

13   an inference that this was not a properly filed

14   complaint, that this complaint was not brought for

15   proper purposes, and that this complaint -- the filing

16   of this complaint should result in the award of costs

17   and attorney's fees, not only because of what happened

18   here, but also how the Athena defendants used the

19   Virginia courts as a tool to attack the relator who had

20   a case in a D.C. court.

21         And if defendants, who are the subject of *qui*

22   *tam* cases, can collaterally attack relators in state

23   court or other federal courts other than where the *qui*

24   *tam* case resides and collaterally attack their familial

25   members with these kinds of threadbare and baseless

1  complaints, then that is exactly what defendants facing

2  relators are going to do.

3          They are going to attack those relators'

4  families and themselves collaterally because it drives

5  up the cost of the relator.  We had to get local

6  counsel.  We've had to expend almost 90 hours in this

7  case even though it's only been in suit for less than

8  six months.  That is the deterrence mechanism that

9  Rule 11 exists for.  That is the deterrence mechanism

10 that the Virginia state court ruled the good faith

11 Virginia statute exists for, and that is the different

12 mechanism that the Virginia Trade Secrets Act has to

13 prevent this from happening.

14          THE COURT:  I'll ask counsel this, but

15 perhaps you know as well.  The forensic report that the

16 plaintiffs produced with respect to the disk, does it

17 state when the Athena files were actually downloaded

18 onto that disk?  I know the report says it was sometime

19 prior to January-February 2016, but can they tell

20 specifically when those files were originally copied to

21 that disk?

22          MR. ELLIS:  Yes, Your Honor.  There is a

23 specific column, and it's in the footnote of the

24 report.  There's a specific column in that report that,

25 if you look at the attachment, you can see that date.

1  That's how we knew.  When we looked at it, that's how

2  we knew that all of these files -- I forget, 15-some

3  thousand files, all except for the medical records that

4  belong to RE Construction were downloaded before

5  Mr. Smith left the employment of Athena, which comports

6  with his recollection, which was that all of these

7  files were downloaded as part of a backing up system in

8  2013 or 2014.

9            THE COURT:  What's that date range that they

10  were actually downloaded?  2013 or 2014?

11            MR. ELLIS:  I don't recall, Your Honor.  It's

12  in our motion to dismiss.  I believe the latest was,

13  like, 2014.  That's why, if you actually look at the

14  documents, even though he was employed until 2016,

15  there's nothing from 2014 to 2016.

16            THE COURT:  All right.

17            MR. ELLIS:  So I mean, that's why none of

18  this has ever made any sense.  Because if he really

19  hacked the system like they're suggesting, why would he

20  stop?  You know, why would he only take his Outlook

21  files and only up until 2014?

22            THE COURT:  Right.

23            MR. ELLIS:  So those are the reasons why

24  we've asked.  This is the third lawsuit.  We're asking

25  the Court for this, in part, to end the behavior of

1  Athena.

2          THE COURT:  All right.  Thank you.

3          MR. ELLIS:  Thank you, Your Honor.

4          THE COURT:  Counsel.

5          MR. JOHNS:  Good morning, Your Honor.

6          THE COURT:  Good morning.

7          MR. JOHNS:  With your permission, I'm going

8  to lower my mask.

9          THE COURT:  Yes.

10         MR. JOHNS:  It'll be a little bit easier

11 to --

12         THE COURT:  Could you address my question.

13 Do you agree with counsel that the report shows the

14 actual downloading of Athena files sometime prior to

15 2016?

16         MR. JOHNS:  Well, Your Honor, I think the

17 report shows that there is activity before and after

18 determination.

19         THE COURT:  I understand that.  My question

20 is does it reflect when the Athena files were first

21 downloaded to the disk?  Counsel says that there's a

22 footnote that says it was sometime in 2013, '14, '15.

23         MR. JOHNS:  I'm looking at the report.

24         THE COURT:  I have the report.  I, frankly,

25 didn't find the attachment.

1          MR. JOHNS:  Your Honor, we -- our reading of

2    the report is that the files were -- that that hard

3    drive was attached to a computer January 25, 2016.

4          THE COURT:  I understand that you've alleged

5    that the Athena files were, in fact, downloaded on

6    January 25, 2016.  My question is really, is that

7    supported by the report?  I know what the narrative of

8    the report is.  I'm interested in whether you agree

9    with counsel that the footnote indicates dates of

10   actual downloading that preceded 2016.

11         MR. JOHNS:  Your Honor, I'm looking at -- I'm

12   looking at the Exhibit B.  I don't see a date in a

13   footnote in that exhibit.

14         THE COURT:  All right.  Well, let me ask you

15   this:  Other than the disk itself and the forensic

16   report and the fact that the defendant went to work for

17   RE Construction, what other basis or evidence was there

18   to support the complaint?

19         MR. JOHNS:  Well, we think the forensic

20   analysis is really the central part of it.  The

21   relationship -- we have alleged communications between

22   Smith and --

23         THE COURT:  What was the basis for that

24   allegation?  What was the evidence you had that there

25   were discussions pertaining to the conspiracy that you

1   mentioned?  Because you allege in the complaint that

2   Smith committed the violations before becoming an

3   employee or, if he was an employee, he was acting

4   outside the scope of his employment at RE Construction.

5   So that would essentially eliminate any agency theory

6   of liability.

7           MR. JOHNS:  Well --

8           THE COURT:  So what evidence did you have

9   that there were conspiratorial communications?

10          MR. JOHNS:  So the communications, Your

11  Honor, go to what we found on the hard drive, which is

12  not evidence --

13          THE COURT:  Which was what?  There was just

14  simply the Athena files?

15          MR. JOHNS:  There were Athena files.

16          THE COURT:  Right, and the date of those

17  would obviously be important.  Then there were

18  documents, RE Construction documents.

19          MR. JOHNS:  RE Construction documents.

20          THE COURT:  Right.  So how --

21          MR. JOHNS:  There were QuickBook files that

22  had actually been deleted from --

23          THE COURT:  I'm sorry?

24          MR. JOHNS:  There were QuickBook files that

25  had actually been deleted.

1            THE COURT:  QuickBook files of who?

2            MR. JOHNS:  RE Construction.

3            THE COURT:  Right.  So why would any of that

4   support conspiracy claims?

5            MR. JOHNS:  Because there is no other way for

6   them to get onto the hard drive without cooperation

7   between Smith and RE Construction.

8            THE COURT:  Smith's access to RE

9   Construction's computer, why would that support your

10  conspiracy claims based on the Athena files?

11           MR. JOHNS:  Well, the conspiracy theory is,

12  Your Honor, that RE Construction provides this disk,

13  this hard drive to Smith.  Smith accesses the Athena

14  files either himself or through --

15           May I have a small drink of water, Your

16  Honor?

17           THE COURT:  Yes.

18           MR. JOHNS:  Thank you, Your Honor.

19           THE COURT:  Does the report through the

20  metadata reflect when the Athena files -- not only get

21  downloaded but were actually accessed as opposed to the

22  disk itself in some fashion being accessed?

23           MR. JOHNS:  It does show that, when the files

24  were accessed.  The file list is hundreds of pages.

25           Frankly, Your Honor, this was -- you know, on

1   a 12(b)(6) motion, we have consideration of evidence.

2   We don't have Mr. Lyle on the stand to explain the

3   findings.

4          THE COURT:  I understand, but we're beyond

5   that.  We're beyond the allegations.  The question is

6   whether you had a good faith basis for bringing the

7   allegations.  It depends on what evidence you had,

8   whether it's reflected in the complaint or not, what

9   evidence you had to in good faith believe you had these

10  claims.  I'm trying to understand what evidence you had

11  beyond the disk itself and the report.

12         MR. JOHNS:  So it was the -- so the disk, the

13  report, the findings in the -- that were downloaded and

14  then, again, the existence of this hard drive, which

15  was originally alleged to have come from Athena

16  Construction by Mr. Smith.  The forensic analysis

17  showed it did not come from Athena Construction.  I

18  think --

19         THE COURT:  Well, the disk was something that

20  was supposedly not an Athena disk.  I'm not sure how

21  you determined that, but let's assume that's true.  I'm

22  not sure what it means when it says the disk didn't

23  come from Athena Construction.

24         MR. ELLIS:  Well, it wasn't --

25         THE COURT:  Isn't a disk fairly genetic?

1          MR. JOHNS:  The theory is it was not his

2    property when he was an employee with Athena; it's

3    someone else's property.

4          THE COURT:  Right.

5          MR. JOHNS:  And what we found, again, from

6    the report looking at those thousands of files, when

7    they were accessed after the time that Smith has left

8    the employ of Athena, the presence of the RE

9    Construction files on the disk, the living

10   relationships, the employment relationships, all of

11   those, we believe, created a reasonable inference that

12   we can rely on as part of our complaint.

13          I think that the standard says that you --

14   that the reasonable inference that can be made is what

15   could be -- it could be found in discovery, and it's

16   not, well, we're going to go into discovery and find

17   our evidence.  It's are the inferences supported or is

18   the good faith basis established by what we have at the

19   time and what we believe we can find in discovery.  And

20   so I think those are all of the good faith bases.

21          You know, if I can just add a couple of

22   things.  I think there are significant procedural

23   hurdles on this motion because there was no 21-day --

24          THE COURT:  I understand that, but let me ask

25   you this:  There's an allegation that the company was

1   damaged in the amount of $2 million, which increased

2   from $60,000 or $70,000 in the original complaint.

3   What evidence did you have that any of the information

4   on the disk had been or was about to be utilized that

5   was reflected in anything that you knew about?

6          MR. JOHNS:  The allegations were that at the

7   time that the download was made, that RE Construction

8   was in the midst of litigation with Athena.

9          THE COURT:  Right, as a subcontractor.  Was

10  there anything in that litigation that would suggest

11  that RE Construction was utilizing in any way any of

12  the information on the disk?

13         MR. JOHNS:  It's -- it would be difficult to

14  say what they were using and what they weren't using at

15  that time.

16         THE COURT:  Well, there was an allegation

17  that this information was, in fact, being used as part

18  of your trade secrets claim, that it was being

19  misappropriated and used.  What evidence did you have

20  of that?

21         MR. JOHNS:  So, again, the evidence is that

22  it's on a hard drive that is also with RE Construction,

23  QuickBook files, financial files --

24         THE COURT:  Right.

25         MR. JOHNS:  -- and the other documents.  And

1  I believe that for 12(b)(6) purposes and for purposes

2  of filing the complaint, it creates a reasonable

3  inference that can be followed up.  Again, the 12(b)(6)

4  analysis was done with -- considering evidence.

5  Normally, we wouldn't put evidence on.

6          THE COURT:  Right.  I'm trying to find out

7  what the evidence was even though it's not reflected in

8  the complaint.

9          MR. JOHNS:  Right.  I think a good faith

10  basis does not require having all of the evidence that

11  will ever support the complaint.

12          THE COURT:  No, just some evidence.

13          MR. JOHNS:  And I think that there is

14  significant evidence that circumstantially ties these

15  two parties together.

16          THE COURT:  Let me just ask this:  Did you

17  have any evidence at the time that the two companies

18  were in competition for the same clients or that there

19  was a loss of business or that a client that had

20  previously worked with Athena was now working with RE

21  Construction or that any of the information was used in

22  bids or pricing or anything like that?

23          MR. JOHNS:  So RE Construction was a

24  subcontractor.

25          THE COURT:  Right.

1          MR. JOHNS:  And so the -- so with the trade

2  secret claim, under the Virginia Uniform Trade Secrets

3  Act, you can state a claim by possession as well.  So

4  our reading of the VUTSA is that use is not a mandatory

5  condition for finding a violation.  Obviously, we --

6          THE COURT:  That's what you allege.  You say

7  that the defendants intentionally, willfully, and

8  maliciously required, disclosed, and used Athena's

9  trade secrets.

10          MR. JOHNS:  Well, Your Honor, again, that is

11  our inferential belief based on the facts and

12  circumstances and everything that was presented, again,

13  along with the significant presence of the Athena files

14  acquired after the employment of Smith had ended.

15          THE COURT:  Again, just so I'm clear,

16  Counts 2, 3, and 4 all relate to computer fraud,

17  computer invasion.  You lump Smith and RE Construction

18  together.  You didn't have any evidence that the

19  construction company was invading your computers in any

20  fashion?

21          MR. JOHNS:  We had a reasonable --

22          THE COURT:  The only actor here was Smith, is

23  that right, that you allege?

24          MR. JOHNS:  Well, we know it has to have been

25  at least Smith because he's the one who produced the

1    hard drive.

2              THE COURT:  Right.

3              MR. JOHNS:  Again, the reasonable

4    inference -- given all the things that are in the

5    complaint, the reasonable inference is that this was

6    some concerted effort, after he's left Athena, to

7    retrieve and to recover those files, financial files

8    and invoices and contracts and so forth.  So I think

9    all of those create reasonable inferences that create

10   the good faith basis to put forward the complaint.

11             THE COURT:  All right.

12             MR. JOHNS:  Then, Your Honor, Mr. Ellis

13   didn't speak about Rule 11 in his presentation.  It's

14   briefed.  I think three issues related to that.  We've

15   spoken a lot about the substantive part.  There was no

16   21-day service, which is required by the rule.  And it

17   was filed after the close of the case, and the Fourth

18   Circuit says that in both of those instances, you don't

19   have access to Rule 11.

20             And then, also, there's been no presentation

21   of what the attorney fees are or what they amounted to.

22   And so even if the Court was inclined to award those

23   fees, they would still have to be reasonable.  We would

24   have to have an opportunity to --

25             THE COURT:  I understand.

1          MR. JOHNS:  -- examine them.

2          So I believe, Your Honor, that there was a

3    good faith basis based on those reasonable inferences,

4    based on the fact that we had this forensic analysis.

5    We know the relationship to the parties.  We know the

6    post employment, the subsequent employment.  I think

7    all of those allow us to make that reasonable

8    inference, and I don't think a plaintiff is required to

9    have every fact in hand, simply that a reasonable

10   investigation and reasonable inferences were made.

11   That would be our opposition.

12          THE COURT:  All right.  Thank you.

13          Mr. Ellis, I'll give you the last word on

14   this.

15          MR. ELLIS:  Yes, Your Honor.  Your Honor

16   asked counsel several times of what is the evidence.

17   What is the evidence that these documents were used in

18   the -- we call it a litigation.  It's called a

19   litigation, but it was actually an arbitration because

20   it was a subcontractor.  They were arguing about how

21   much they should be paid.  Well, the arbitration, there

22   was an exchange of discovery.  Documents were exchanged

23   by the parties.  None of those documents came from the

24   drive, from the disk.  None of those documents were

25   used.  There is no evidence that it was used in that

1 litigation.

2          RE Construction is a subcontractor that was

3 fed work by Athena.  There's no evidence that they used

4 these documents to become a prime government contractor

5 or to steal or poach a client or a contract.  There's

6 nothing to suggest that even though they've made --

7 there's nothing to suggest it.  There's nothing there

8 at all even though they've made the allegation of

9 misappropriation.

10          There is simply an allegation or suggestion

11 that this disk existed within the arm's reach of the

12 employees of RE Construction.  That is not enough.

13 There is no fact supporting that RE Construction

14 accessed the Athena documents.  Yes, they accessed the

15 disk, but the report doesn't show that the Athena

16 documents were accessed by RE Construction.  The report

17 doesn't show that the Athena documents were printed or

18 downloaded.  The report -- the forensic report doesn't

19 suggest anything in terms of use or misappropriation.

20          The report in the footnote that I was

21 referring to is -- there's a footnote where it explains

22 what the headers are on the spreadsheet, and there was

23 a spreadsheet attached to the back of the report.  One

24 of those headers relates to the date that the documents

25 were downloaded.  So if you go to the spreadsheet under

1    that header, you can actually look to see when those

2    documents were downloaded onto the disk.  And if you

3    look and see, I think we state only 24 out of the 14

4    were downloaded onto the disk after Mr. Smith was

5    terminated.  So that's the reference to the footnote.

6              THE COURT:  Those 24 relate to --

7              MR. ELLIS:  They relate to RE Construction

8    stuff --

9              THE COURT:  -- RE Construction documents.

10             MR. ELLIS:  -- not to Athena stuff.  And they

11   don't show anything in terms of anyone doing anything

12   with this disk.  We don't dispute that --

13             THE COURT:  There's no evidence on that

14   report concerning when other than when the Athena

15   documents were accessed after being downloaded?

16             MR. ELLIS:  There is a summary statement in

17   the report that they were accessed somewhere between

18   January 25, 2016, and April 2, 2018.  But if you look

19   at it, the stuff that comes before the *qui tam*

20   litigation was just accessing the disk, not -- there's

21   nothing that showed --

22             THE COURT:  Well, that's what I'm after.  Not

23   just accessing the disk, but accessing the Athena

24   documents themselves.  Is there anything in the report

25   that indicates dates of access as to the Athena

1  documents themselves?

2        MR. ELLIS:  I don't believe so, Your Honor.

3  Because if you had that, then you could actually, you

4  know, relate it to -- well, here's RE Construction

5  attending a bidding conference, and they've downloaded

6  all of these financials for Athena.  You could actually

7  show what defendants are alleging.  None of that

8  information is in there.  There's no information as to

9  when documents were downloaded or by who other than to

10 say that the disk was accessed.

11       THE COURT:  All right.

12       MR. ELLIS:  That work could have been done

13 and at least it should have been done before these

14 lawsuits were brought, or they should have just brought

15 it against Smith.  If they got into discovery,

16 according to their theory of the statute of

17 limitations, they could've always come back to the

18 Court and added a newly discovered party.

19       They didn't do that because the same reason

20 they didn't file this as a cross-motion before Judge

21 Mehta.  They didn't do it because they wanted the

22 duplicative process.  They wanted the burden.  They

23 wanted to serve him at his home with his in-laws.  They

24 wanted all of this.  They didn't care about the facts.

25 They wanted this process, and they wanted the two

1  defendants to face bills in the tens of thousands of

2  dollars for this defense.  That's what they wanted, and

3  that's what they got.

4         The Court shouldn't allow them to get away

5  with it.  That's why we filed the motion.

6         Thank you, Your Honor.

7         THE COURT:  All right.  I'm going to take it

8  under advisement.  Let me just state a couple of

9  things.  I think Rule 11 quite clearly requires service

10 of the actual motion, and that wasn't done in this

11 case.  So to the extent there's going to be an award of

12 attorney's fees, if the Court makes that decision, it

13 would have to be under the Virginia Trade Secrets Act

14 or the Virginia equivalent of Rule 11.  The Court will

15 consider that.

16        I would like counsel to file very short --

17 I'm talking about one page or two pages of just

18 confirming their view specifically of whether the

19 forensic report identifies the dates on which the

20 Athena files were downloaded and any dates on which the

21 Athena files, as opposed to the disk itself, were

22 accessed.  If you could, do that within the next, say,

23 seven days.

24        MR. JOHNS:  Yes, Your Honor.

25        MR. ELLIS:  Yes, Your Honor.

```
 1            THE COURT:  All right.  The Court will take
 2  it under advisement.
 3            All right.  Anything further?
 4            MR. JOHNS:  I was just looking for my mask.
 5            THE COURT:  All right.
 6            MR. ELLIS:  Nothing, Your Honor.
 7            THE COURT:  All right.  Thank you.
 8            Counsel is excused.
 9            The Court will stand in recess.
10            ------------------------------------
                    Time:  11:48 a.m.
11
12
13
14
15
16
17
18
19
20
21      I certify that the foregoing is a true and
22
    accurate transcription of my stenographic notes.
23
24
                                    /s/
25                        Rhonda F. Montgomery, CCR, RPR
```